**In re Odie S. CATER, Debtor.**

**Odie S. Cater, Appellant,**

**v.**

**American General Finance, Appellee.**

**No. Civ.A. 99–T–800–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 14, 1999.

Forrest C. Rule, Jr., Greenville, AL, for Odie S. Cater.

Britt Batson Griggs, Parnell & Crum, PA, Montgomery, AL, for American General Finance.

## OPINION

MYRON H. THOMPSON, Chief Judge.

The issue presented in this appeal is whether § 506(d) of the Bankruptcy Code, 11 U.S.C.A. § 506(d), allows a debtor to have a consensual junior lien on her property voided when the property's senior lien exceeds its market value. As will be explained below, subsection (d) of § 506 does not provide for this, and, accordingly, the order of the bankruptcy court so holding will be affirmed.

## I. BACKGROUND

The facts in this case are not in dispute. Appellant Odie S. Cater owns a parcel of

real property in Greenville, Alabama.[1] Her property is subject to a recorded first-mortgage lien in the amount of $ 50,042.59 held by the United States Department of Agriculture's Rural Housing Service.[2] Appellee American General Finance holds a recorded consensual[3] second-mortgage lien on the property in the amount of $ 4,754.33.[4]

In April 1998, Cater filed a petition for relief under Chapter 13, later converted to Chapter 7, of the United States Bankruptcy Code.[5] At the time she filed her petition, her property had a market value of $ 34,500.00, which was $ 15,542.59 less than the amount of the lien securing the first mortgage.[6]

Cater filed an adversary proceeding seeking a determination of the validity and extent of American General's interest in her property. Cater maintained that American General's second-mortgage lien on her property was void under subsection (d), read in conjunction with subsection (a), of § 506 because it was not secured by any equity. Section 506 provides, in part, as follows:

> "(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing

on such disposition or use or on a plan affecting such creditor's interest.

> \* \* \* \* \* \*

> "(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

> (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

> (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title."

As used in § 506, the term "allowed claim" is defined in 11 U.S.C.A. § 502 as follows: "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects." The bankruptcy court rejected Cater's argument that American General's second mortgage should be voided. Cater now appeals from that decision.

This district court has jurisdiction over her appeal under 28 U.S.C.A. § 158(a), which provides that district courts shall have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. On appeal, both parties have agreed to rely on the record made in and the briefs submitted to the bankruptcy court.

## II.   STANDARD OF REVIEW

■ A district court reviews a bankruptcy court's factual findings under a clearly erroneous standard, *see* Fed. R.Bankr.P. 8013; *Club Assocs. v. Consolidated Capital Realty Investors*, 951 F.2d

---

**1.**   *See* Appellant's brief, filed in the bankruptcy court on June 1, 1999, at 4.

**2.**   *See id.* at 4–5.

**3.**   *See* Transcript of hearing before the bankruptcy court on May 24, 1999, at 7.

**4.**   *See* Appellant's brief, filed in the bankruptcy court on June 1, 1999, at 5.

**5.**   *See id.* at 4.

**6.**   *See id.* at 4–5.

1223, 1228 (11th Cir.1992), and its legal conclusions *de novo*. *See Nordberg v. Arab Banking Corp.*, 904 F.2d 588, 593 (11th Cir.1990). "[T]he district court … may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed.R.Bankr.P. 8013.

## III. DISCUSSION

■ In rejecting Cater's claim, the bankruptcy court relied on *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). There, the Supreme Court held that subsection (d) of § 506 does not authorize a debtor to " 'strip down' a creditor's lien on real property to the value of the collateral, as judicially determined, when that value is less than the amount of the claim secured by the lien." 502 U.S. at 412, 112 S.Ct. at 775. The facts giving rise to this holding were that creditors loaned $119,000.00 to a debtor and her husband, with the loan secured by a deed of trust granting a lien on two of the debtor's parcels of real property. *See id.* The debtor later filed a petition under Chapter 7 of the Bankruptcy Code and commenced an adversary proceeding in the bankruptcy court seeking, under § 506(d), to void a portion of the creditors' lien. *See id.* at 413, 112 S.Ct. at 776. The debtor reasoned that because the $119,-000.00 debt exceeded the fair market value of the land, which the bankruptcy court had determined to be $39,000, the bankruptcy court should have reduced the lien to that value. *See id.* According to the debtor, subsection (d) of § 506 should be construed in conjunction with subsection (a), that is, indivisibly as follows: Under § 506(a), the creditors would have an 'allowed secured claim' only to the extent of the judicially determined value of their collateral; and, under § 506(d), the bankruptcy court is required to void the lien as to the remaining portion of the creditors' claim because the remaining portion is not an 'allowed secured claim' within the meaning of subsection (a). *See id.* The bankruptcy court disagreed and refused to grant the debtor relief, *see id.*, and both the district court and the court of appeals affirmed. *See id.* at 414, 112 S.Ct. at 776.

In affirming, the Supreme Court rejected the debtor's position, observing that subsections (a) and (d) of § 506 are not to be read in a complementary and indivisible manner, but rather are to be interpreted separately. *See id.* at 414–17, 112 S.Ct. at 776–78. The Court rejected the debtor's conclusion that any portion of an allowed claim that is unsecured under subsection (a) is not an 'allowed secured claim' within the scope of subsection (d) and void under that provision. *See id.* at 417, 112 S.Ct. at 778 ("Were we writing on a clean slate, we might be inclined to agree with petitioner that the words 'allowed secured claim' must take the same meaning in § 506(d) as in § 506(a)."). Instead, the Court adopted the creditors' position, interpreting subsection (d) such that an 'allowed secured claim,' as used in that provision, need not be read as an "indivisible term of art" defined by reference to subsection (a). *See id.* at 415, 112 S.Ct. at 777. The Court reasoned that an 'allowed secured claim' should be read "term-by-term to refer to any claim that is first, allowed, and, second, secured," *id.*, with the result that 'allowed secured claim' (for purposes of subsection (d) *alone* ) simply connotes an 'allowed' claim that is 'secured' in the ordinary sense, that is, that is backed up by a security interest in property, whether or not the value of the property suffices to cover the claim. *See id.* This reading of subsection (d) restricts its "sensible function" to that of "voiding a lien whenever a claim secured by the lien itself has not been allowed" under § 502. *Id.* at 415–16, 112 S.Ct. at 777. The Court therefore held that § 506(d) does not allow a debtor to "strip down" a creditors' lien where a creditor's claim is secured by a lien and has been fully allowed pursuant to § 502.

The Supreme Court's bases for adopting this construction of § 506(d) were two-fold.

First, the practical effect of the debtor's interpretation of § 506(d) would be to freeze a creditor's secured interest at the judicially determined value of the collateral, *see id.* at 417, 112 S.Ct. at 778, with the result that "the creditor would lose the benefit of any increase in the value of the property by the time of the foreclosure sale," thereby giving any "windfall" to the debtor. *Id.* The Court explained that, "Any increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor and not to the benefit of other unsecured creditors whose claims have been allowed and who had nothing to do with the mortgagor-mortgagee bargain." *Id.*

Second, there is no evidence that Congress intended to depart from the pre-Bankruptcy Code rule that liens pass through bankruptcy unaffected. *See id.* at 417, 112 S.Ct. at 778. "[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor in personam—while leaving intact another—namely, an action against the debtor in rem." *Id.* at 418, 112 S.Ct. at 778 (quoting *Johnson v. Home State Bank,* 501 U.S. 78, 84, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991)). "Apart from reorganization proceedings, *see* 11 U.S.C. §§ 616(1) and (10) (1976 ed.), no provision of the pre-Code statute permitted involuntary reduction of the amount of a creditor's lien for any reason other than payment on the debt." *Id.* at 419, 112 S.Ct. at 779.

The Supreme Court therefore determined that the better reading of § 506(d) is that a "creditor's lien stays with the real property until the foreclosure," *id.* at 417, 112 S.Ct. at 778, which is what a mortgagor and a mortgagee bargain for. *See id.* The Court limited subsection (d)'s "voidness language ... to the security aspect of the lien and then only to the *real deficiency* in the security." *Id.* (emphasis added).

The Supreme Court concluded that, because the parties in *Dewsnup* did not dispute that the claim at issue was 'allowed' under § 502 and was 'secured' by a lien with recourse to the underlying collateral, *see id.* at 417, 112 S.Ct. at 778, the lien did not come within the scope of § 506(d). *See id. See also Wrenn v. American Cast Iron Pipe Co.,* 40 F.3d 1162, 1166 (11th Cir.1994) (*Dewsnup* means that "Section 506(d) does not avoid liens securing allowed claims."); *Laskin v. First Nat'l Bank of Keystone,* 222 B.R. 872, 876 (9th Cir. BAP 1998) ("*Dewsnup* teaches that, unless and until there is a claims allowance process, there is no predicate for voiding a lien under § 506(d)."); *Rombach v. United States,* 159 B.R. 311, 313 (Bankr.C.D.Cal. 1993) ("In essence, the [*Dewsnup* ] Court decided that a lien is avoidable under § 506(d) only to the extent that a claim in disallowed under § 502.").

Here, Cater argues that *Dewsnup* is not controlling because "*Dewsnup* involved a lien that was secured by at least some equity in the property," whereas here no equity is behind American General's lien on Cater's property.[7] The court disagrees. Although the lien at issue in *Dewsnup* was secured by at least some equity in the debtor's property, that factual distinction is not relevant. What is relevant is the Supreme Court's construction of § 506(d).

The Supreme Court made clear in *Dewsnup,* that as long as the claim is 'allowed' under § 502 and the claim is 'secured' by a valid lien, regardless of the lien's present value, *see id.* at 417, 112 S.Ct. at 778, subsection (d) does not apply. Here, because American General's claim is allowed under § 502 and is secured by a valid lien, the same result obtains. The fact that the value of the property is insufficient to cover the debt does not warrant a different result. *See Laskin,* 222 B.R. at 876 (concluding that *Dewsnup's* rationale applies equally to liens that are wholly unsecured); *In re Virello,* 236 B.R. 199, 206 (Bankr.D.S.C.1999) (same); *Swiatek v.*

---

7.  Appellant's brief, filed in the bankruptcy court on June 1, 1999, at 5.

*Pagliaro*, 231 B.R. 26, 29–30 (Bankr.D.Del. 1999) (same).

Who knows what the real estate market will be tomorrow? By the time of sale in the future, a piece of real estate may have increased in value to cover a second-mortgage lien not covered by the property's value today. As in the *Dewsnup* case, American General should be able to enjoy "the benefit of any increase in the value of the property" until it is sold. *Dewsnup*, 502 U.S. at 417, 112 S.Ct. at 778.

In support of her position that, despite *Dewsnup*, American General's lien is void under § 506(d), Cater relies on *Howard v. National Westminister Bank, U.S.A.*, 184 B.R. 644 (Bankr.E.D.N.Y.1995); *Yi v. Citibank (Md.), N.A.*, 219 B.R. 394 (E.D.Va. 1998); and *In re Geyer*, 203 B.R. 726 (Bankr.S.D.Cal.1996). Her reliance on these cases is misplaced.

In *Howard*, a Chapter 7 debtor's residence was subject to a lien arising from a first mortgage, the value of which exceeded the market value of the residence. *See* 184 B.R. at 645. The debtor's residence was also subject to a judgment lien. *See id.* Because their was no equity in the residence securing the judgement lien, the debtor sought to have the judgment lien voided under subsections (a) and (d) of § 506. *See id.* The Bankruptcy Court for the Eastern District of New York granted the debtor relief under subsections (a) and (d), finding *Dewsnup* inapplicable on two grounds. *See id.* at 647. First, the court reasoned that, unlike in *Dewsnup*, the lien was not consensual, *see id.*, and, thus, the parties never bargained to secure the debt with a lien on the debtor's residence, which undermines one of the major underpinnings of *Dewsnup*. *See id.* Second, according to the court, because there is no equity securing the judgment debt, *see id.*, no windfall will go to the judgment lienholder in the event of a judicial sale of the residence. *See id.* Consequently, the court found that another primary undermining of *Dewsnup* did not exist in the case. *See id.* The *Howard* court did not discuss whether the claim on the judgment lien had been allowed under § 502. However, for the reasons which this court has already discussed, that fact is the dispositive issue, under *Dewsnup*, in determining whether an allowable lien (which the judgment lien in Howard apparently was) may by voided under § 506(d). *See Laskin*, 222 B.R. at 876. To the degree that the *Howard* court could be understood to indicate otherwise, this court disagrees with it.

In *Yi*, a Chapter 7 debtor's parcel of property was subject to three consensual liens. *See* 219 B.R. at 395. The combined value of the first two liens exceeded the value of the property. *See id.* The debtor sought to have the third lien voided under § 506(d). *See id.* Relying on *Dewsnup*, the bankruptcy court denied the debtor relief. *See id.* The District Court for the Eastern District of Virginia reversed, finding *Dewsnup* factually distinguishable. *See id.* at 397. In voiding the third lien on the debtor's property, the *Yi* court reasoned that its decision was compelled by the plain language of § 506. *See id.* at 397–98. Specifically, the *Yi* court found that the third lien was unsecured under § 506(a) and thus was not an 'allowed secured claim' under § 506(d). *See id.* at 397–99. However, the *Yi* court's plain-meaning construction of § 506 is essentially identical to that of the debtor's in *Dewsnup*, which the Supreme Court expressly rejected. The Supreme Court refused to construe subsections (a) and (d) of § 506 to be complementary, to be read together, and to be read according to their plain meaning. *See* 502 U.S. at 414–420, 112 S.Ct. at 776–79. Instead, the Supreme Court based its construction of § 506 on policy considerations and legislative history. *See id.; see also id.* at 420, 112 S.Ct. at 779–80 (Scalia, J. dissenting) (harshly criticizing majority for reading § 506 contrary to its plain language, that is, according to what majority believes "Congress ought to have said" rather than "what Congress said"). This court, therefore, reads *Yi* to contradict *Dewsnup*. *See Virello*, 236 B.R. at 203–04.

Finally, in *Geyer*, Chapter 13 debtors moved to void a lien securing a second priority deed of trust on their residence. *See* 203 B.R. at 727. Their residence was also subject to a lien securing a first priority deed of trust, the value of which exceeded the market value of the residence. *See id.* The bankruptcy court granted the debtors' motion. The court's reasoning for doing so was two-fold. First, because there was no equity behind the second lien the creditor would not have an allowed secured claim under § 506(a) and therefore the lien was void under § 506(d). *See id.* at 728. The court found *Dewsnup* inapplicable because "[t]he *Dewsnup* court did not decide the result if the lien were determined to be completely unsecured under § 506(a)." *Id.* Second, 11 U.S.C.A. § 1332(b)(2) (which provides, generally, that a Chapter 13 bankruptcy plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims") did not protect the second lienholder's claim because that provision protects the holder of a claim only when that claim is at least partially secured. *See id.* at 729. Like the *Yi* court, the *Geyer* court failed to yield to *Dewsnup's* mandate that § 506(d) be construed independently of § 506(a). The *Geyer* court summarily found *Dewsnup* factually distinguishable, without considering the applicability *Dewsnup's* rationale, which this court believes contradicts *Geyer's* conclusion. *Geyer*, therefore, does not help Cater.

For the foregoing reasons, the court concludes that Cater may not void American General's lien on her residence under § 506(d). An appropriate judgment will be entered affirming the judgment of the bankruptcy court.